641 A.2d 990

Thomas Lawrence **WILLIAMS**, Jr.

v.

**STATE of Maryland.**

No. 1287, Sept. Term, 1993.

Court of Special Appeals of Maryland.

June 3, 1994.

470

Geraldine Kenney Sweeney, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Peter Engel, Asst. Atty. Gen., Crownsville, (J. Joseph Curran, Jr., Atty. Gen., Crownsville and Leonard C. Collins, State's Atty. for Charles County, La Plata, on the brief), for appellee.

Argued before MOYLAN, ALPERT and WENNER, JJ.

MOYLAN, Judge.

The appellant, Thomas Lawrence Williams, Jr., was convicted in the Circuit Court for Charles County in a nonjury trial of both 1) assault with intent to maim, disfigure, or disable in contravention of Md.Ann.Code art. 27, § 386 and 2) reckless endangerment in contravention of § 120. He was sentenced to a term of ten years incarceration for the assault with intent to maim and to a concurrent sentence of five years for the reckless endangerment. On this appeal, the appellant raises the single contention that both the conviction for reckless

endangerment and the conviction for assault with intent to maim cannot stand.

We agree with the appellant's contention. What remains to be determined is the basis for that agreement, for the appellant offers us two alternative rationales, inviting us to choose one.

The appellant was guilty of a single criminal act in the course of a single criminal episode. The details are inconsequential. Suffice it to say that in the course of a drunken barroom fight between one Kevin Shoemaker and David Williams, the brother and codefendant of the appellant, the appellant briefly intervened in the fight which, until the moment of his intervention, had been at a nonlethal level. The appellant's intervention consisted of walking up to Kevin Shoemaker and stabbing him twice with a knife, once beneath the chin and once in the upper left section of Shoemaker's chest.

It is not disputed that the evidence was legally sufficient to sustain the appellant's conviction for assaulting Kevin Shoemaker with the intent to maim, disfigure, or disable. Section 386 provides, in pertinent part:

> If any person shall unlawfully ... and maliciously stab, cut or wound any person ... with intent to maim, disfigure or disable such person, ... every such offender ... shall be guilty of a felony and, upon conviction [is] subject to imprisonment for not more than 15 years.

Md.Ann.Code art. 27, § 386 (1992). From the two acts of stabbing, a fact finder would be permitted to draw the inference that the stabber intended permanently to maim, disfigure, or disable his victim. *Hammond v. State*, 322 Md. 451, 588 A.2d 345 (1991).

It is not disputed that the evidence was also legally sufficient to sustain the appellant's conviction for recklessly creating a substantial risk of death or serious physical harm to Kevin Shoemaker. Section 120(a) provides:

> Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to

another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 5 years or both.

Md.Ann.Code art. 27, § 120(a) (1992). Stabbing a victim in the neck or lower face and then again in the chest-shoulder area could reasonably be deemed to be an act creating a substantial risk of death or serious physical injury to the victim of the stabbing.

The appellant, however, does not claim that he could not legitimately have been convicted of *either* offense. He claims, rather, that for reasons quite apart from legal insufficiency, he could not legitimately have been convicted and punished for *both* offenses.

### Were the Convictions Inconsistent?

The first rationale advanced by the appellant is that the two convictions are inconsistent. If that be so, at least one of the two, if not necessarily both, will have to be reversed. *State v. Hawkins,* 326 Md. 270, 285–291, 604 A.2d 489 (1992). Even in a jury trial, although an inconsistency between one verdict of guilty and another of not guilty will be tolerated, an inconsistency between two verdicts of guilty, such as the appellant alleges here, will not. *Johnson v. State,* 238 Md. 528, 540–546, 209 A.2d 765 (1965). In a court trial, moreover, inconsistencies of neither variety will be countenanced. *Shell v. State,* 307 Md. 46, 52–58, 512 A.2d 358 (1986). We are here dealing, of course, both with a court trial and with two verdicts of guilty.

■ The appellant reasons that the inconsistency inheres in the respective and incompatible *mentes reae* of the two offenses. The *mens rea* of assault with intent to maim involves the deliberate intention and willful desire and purpose of inflicting harm on the victim. It is a specific intent crime. As such, it

requires not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind,

but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result.

*Smith v. State,* 41 Md.App. 277, 306, 398 A.2d 426, *cert. denied,* 284 Md. 748 (1979). *See also Shell v. State,* 307 Md. 46, 63, 512 A.2d 358 (1986).

■ The *mens rea* of reckless endangerment, by contrast, far from intending, striving, desiring or purposing to bring about a harmful consequence, or any consequence for that matter, is blithely unconcerned with the possible consequences. The state of mind of recklessness, in the context of reckless endangerment as well as in other criminal contexts such as depraved heart murder and possibly grossly negligent manslaughter, is variously described as an attitude wherein the criminal agent, conscious of the life-endangering risk involved, nonetheless acts with a conscious disregard of or wanton indifference to the consequences.

■ As will be more fully discussed hereinafter, there is a difference of opinion in the case law around the country as to whether the state of mind of recklessness in the context of reckless endangerment is to be judged by a subjective or an objective standard. Under the former, the defendant must have an actual perception that his conduct will create a risk that is "substantially certain to cause a [harmful] result." *Minor v. State,* 85 Md.App. 305, 316, 583 A.2d 1102 (1991), *aff'd, Minor v. State,* 326 Md. 436, 605 A.2d 138 (1992). Under the latter, by contrast, it is enough that the defendant be "aware that his conduct *might* cause the result, though it is not substantially certain to happen." *Id.* (emphasis in original). Maryland has opted for the objective standard.[1] *Minor v. State,* 85 Md.App. at 316, 583 A.2d 1102; *Minor v. State,*

---

1. This is a very simplistic statement about a very complex issue and is not intended for authoritative quotation. As will be more fully developed later in this opinion, any examination of what is subjective and what is objective about the *mens rea* of reckless endangerment is an examination of a multi-layered enigma strewn with subtleties and nuances. No glib short-hand summary is possible.

326 Md. at 443, 605 A.2d 138. Whatever the content of the perception of the risk, however, both the subjective and the objective standards of recklessness require that the defendant "consciously disregard" the risk. It is the conscious disregard of the risk, whether it is perceived to be great or small, and the indifference to the human consequences that is the fulcrum of the appellant's present contention.

In one sense of the words, a "disregard" of and an "indifference" to the consequences might seem categorically to preclude or be precluded by a deliberate and purposeful effort to inflict a harmful consequence, just as surely as they might seem categorically to preclude or be precluded by a deliberate and purposeful effort to *avoid* a harmful consequence.[2] A willful and determined malefactor, such as one who assaults with the intent to maim, cannot, it would seem, be lightly dismissed as one who is *merely* disregardful of or indifferent to his own malevolent purpose. The malevolence is arguably more significant than that. One meticulously contriving to bring about a harmful end cannot, in one sense of the word, be characterized as *merely* reckless. Precisely such a conclusion was reached in *People v. Coleman,* 131 Ill.App.3d 76, 86 Ill.Dec. 351, 475 N.E.2d 565 (1985), a case in which the Appellate Court of Illinois held that the inconsistent *mentes reae* precluded convictions for both attempted murder and reckless conduct.

It is, to be sure, an intriguing problem. It is also a nettlesome one, but only at first glance. Many apparent legal problems turn out to be linguistic problems. As we move up the continuum of escalating blameworthiness from negligence to gross negligence to recklessness to specific intent and beyond, at each level our descriptive concentration is on the last enhancing or incremental element that may bring us up to

---

**2.** This is in the same sense that the true believer and the atheist share in common the possession of a firm conviction, albeit not the same conviction, and are both to be contrasted with the agnostic, who has no conviction at all, positive or negative. Thus, those indifferent to harmful consequences are to be contrasted both with those bent on doing good and those bent on doing evil alike.

that level. The definitional focus at each step is on the additional element that may *raise* the level of blameworthiness to that level, not on what will hold it down to that level. Because the progression is upward, we employ language, in our statute law and in our case law, so as to contrast the level of blameworthiness in issue with those levels below it, not with those above it.

■ When, therefore, we describe the *mens rea* of reckless endangerment in terms such as "the wanton disregard of life-threatening consequences," what the law means is that *nothing less than* that *mens rea* will suffice. It does not mean that *neither less than nor more than* that *mens rea* will suffice. We are describing the minimum content for a finding of guilt in a particular degree, not the maximum content. It is always a defense to prove that one is less culpable than charged. It is not a defense to prove that one is more culpable than charged. One does not defend against a charge of second-degree murder by proving that one was really guilty of first-degree murder. To prove culpability at a given level, the State is not required to disprove greater culpability, although a casual scanning of definitional sentences might sometimes lead us to believe so.

Thus, there is nothing legally incompatible or legally inconsistent between the *mens rea* of a reckless disregard for life-threatening consequences and the *mens rea* of a specific intent to inflict harm. The latter is more blameworthy than the former, but it is not legally inconsistent with the former. To be sure, a specific intent to effect a desired consequence, on the one hand, and a conscious disregard of or callous indifference to the consequence, on the other hand, are mental states that are distinct and apparently contradictory in both a linguistic and a psychological sense. They are not, however, incompatible or inconsistent in a legal sense.

■ To be guilty of reckless endangerment, the defendant must be shown to have possessed *nothing less than* a reckless disregard of the consequences of his life-threatening act. He may, however, be shown to have possessed a more blamewor-

thy *mens rea,* such as an intent to maim, but that excess culpability will be simply surplusage as far as the reckless endangerment charge is concerned. It certainly does not operate to exculpate him of the reckless endangerment.

This type of linguistic problem is a recurring phenomenon in the criminal law. Although slack linguistic usage frequently describes a lesser degree of guilt in terms of the absence of a greater degree of guilt, the absence of the greater guilt is never an affirmative element that must be proved. An *attempt* to commit a crime, for instance, is frequently, albeit carelessly, defined in terms of the failure to commit a crime. It does not, however, require proof of non-consummation; it is simply an available alternative whenever there is non-proof of consummation. *Lightfoot v. State,* 25 Md.App. 148, 334 A.2d 152 (1975), *aff'd,* 278 Md. 231, 360 A.2d 426 (1976). Second-degree murder is frequently described as unpremeditated murder. It does not, however, require proof of nonpremeditation; it is simply an available alternative when there is non-proof of premeditation. Daytime housebreaking, despite its express terms, does not require proof of daytime; it is simply an available alternative when there is non-proof of nighttime. Were it not so, the "twilight burglar," where it could not be proved that the breaking took place either in the nighttime or in the daytime, might find undeserved safe haven in the eye of the hurricane. *Henry v. State,* 20 Md.App. 296, 302–303, 315 A.2d 797, *rev'd on other grounds,* 273 Md. 131, 328 A.2d 293 (1974).

The apparent problem disappears when we appreciate the legal notion that proof of a lesser *mens rea* may sometimes take two very different forms. One possibility is, indeed, proof of the affirmative elements plus demonstrated proof that a greater *mens rea* did *not* exist. The other possibility is simply proof of the affirmative elements plus, quite coincidentally, a failure of proof as to the greater *mens rea.* If proof of a lesser *mens rea* necessarily required disproof of a greater *mens rea,* then there might sometimes be an inconsistency between verdicts of guilty requiring proof of the lesser *mens rea* and the greater *mens rea,* respectively. It is, however,

the other possibility for proving the lesser *mens rea* that takes the case of multiple convictions out of what might sometimes be the inconsistent-verdicts category and places it, instead, in the merger category. The greater proof does not negate or contradict the lesser proof but only subsumes it.

How, one might ask, could a single manslaughter, for instance, be both involuntary and voluntary? Linguistically, it would seem that the two are mutually exclusive. If, indeed, a conviction for involuntary manslaughter required demonstrated proof that the killing was not voluntary, then findings that it was both involuntary and voluntary would, indeed, be inconsistent. Because, however, a finding of involuntary manslaughter may imply nothing more than the non-proof of voluntariness, simultaneous findings of both involuntariness and voluntariness would require no more than the merger of the lesser *mens rea* into the greater. *Cf. State v. Parker*, 128 Ariz. 107, 624 P.2d 304 (1980).

By parity of reasoning, the proof of disregard or indifference necessary for reckless endangerment does not require disproof that a particular consequence was specifically intended or affirmatively desired. A finding of disregard or indifference may imply nothing more than the failure of proof of specific intent. Concern for a specifically intended consequence does not belie an unconcern for such a consequence but, all other conditions for merger being satisfied, simply subsumes it.

Whenever there is doubt as to the appropriate level of guilt, the defendant, of course, receives the benefit of the doubt and is convicted only at the lower level. A defendant is never, however, entitled to total exculpation simply because there is ambiguity as to his level of guilt. Different levels of culpability are not neatly abutting and mutually exclusive so as to render one necessarily inconsistent with the other.

An argument very similar to the appellant's present contention—that an intent or purpose specifically entertained gainsays an attitude of mere indifference—was made in *Robinson v. State*, 307 Md. 738, 517 A.2d 94 (1986) in the context of

depraved-heart murder. In rejecting it, Judge Adkins reasoned, 307 Md. at 745, 517 A.2d 94:

> "It involves rather the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not. The common law treats such a state of mind as just as blameworthy, just as anti-social and, therefore, just as truly murderous as the specific intents to kill and to harm."

*Robinson* seizes upon the last sentence we have just quoted and *argues that "depraved heart" murder does not exist if there is a specific intent to harm. See also Lindsay v. State,* 8 Md.App. 100, 104, 258 A.2d 760, 763 (1969) ("depraved heart" murder exists where, "conceding that there was no actual intent to injure, an act was done or duty omitted wilfully, the natural tendency of which was to cause death or great bodily harm"); R. Perkins, *Criminal Law* at 36 (2d ed. 1969) ("... even if there is no actual intent to kill or injure"). But *these authorities say no more than that the crime may be committed absent intent to injure. They do not hold that the crime is not committed if there is an intent to injure.*

. . . . .

*The terms "recklessness" or "indifference," often used to define the crime, do not preclude an act of intentional injury.* (emphasis supplied).

■ We hold that the convictions for assault with intent to maim and for reckless endangerment were not mutually inconsistent. Our rejection of the appellant's first rationale, however, serves only to enhance the force of his second rationale.

### Should the Convictions Have Merged?

Reckless endangerment is a new entry in the lexicon of criminal law. Judge Bishop traced its history in *Minor v. State,* 85 Md.App. 305, 313–319, 583 A.2d 1102 (1991), *aff'd,* 326 Md. 436, 605 A.2d 138 (1992). It was enacted by 1989

Md.Laws, Chap. 469, taking effect on July 1, 1989. It is codified as Md.Ann.Code art. 27, § 120.

The case law concerning reckless endangerment is still skimpy. Our *Minor v. State* was the first reported decision to deal with it. Our concern in *Minor* was with the objective versus the subjective test for at least one aspect of the *mens rea* of recklessness. In *Minor v. State*, 326 Md. 436, 605 A.2d 138 (1992), in which the Court of Appeals affirmed the decision of this Court, Chief Judge Murphy engaged in a thorough-going analysis of the objective versus the subjective standard, opting, as we had done, for the objective standard on possibly two sub-issues. In *Albrecht v. State*, 97 Md.App. 630, 645–650, 632 A.2d 163 (1993), we summarized what the two *Minor* decisions had to say about one aspect of the *mens rea* of recklessness.

█ Reckless endangerment is quintessentially an inchoate crime. It is designed to punish potentially harmful conduct even under those fortuitous circumstances where no harm results. Judge Bishop explained, 85 Md.App. at 314–315, 583 A.2d 1102:

> This statute was enacted in 1989 to prohibit "conduct which, while not criminal under current law, creates a substantial risk that a criminal act will result." Bill Analysis, H.B. 1448, Senate Judicial Proceedings Committee, 1989 ("Bill Analysis"); Floor Report, H.B. 1448, Senate Judicial Proceedings Committee 1989 ("Floor Report"). As the Committee observed, *the purpose of the statute*, like the statute prohibiting reckless driving, Md.Transp.Code Ann. § 21–901.1, *is to deter crime before injury or death occurs. Id.* (footnote omitted) (emphasis supplied).

The words of Chief Judge Murphy were of similar import in *Minor v. State*, 326 Md. at 442, 605 A.2d 138:

> It is readily evident from the plain language of § 120(a) that it was enacted to punish, as criminal, reckless conduct which created a substantial risk of death or serious physical injury to another person. *It is the reckless conduct and not*

*the harm caused by the conduct, if any, which the statute was intended to criminalize.* (emphasis supplied).

As with all inchoate crimes, reckless endangerment was intended to plug a gap in the law. Inchoate crimes are designed to inhibit criminal conduct before it goes too far or to punish criminal conduct even when, luckily, it misfires. Reckless endangerment is, indeed, doubly inchoate. At the *actus reus* level, it is one element short of consummated harm. At the *mens rea* level, it is one element short of consummated harm. At the *mens rea* level, it is one element short of the specific intent necessary for either an attempt or for one of the aggravated assaults.

When the crime of reckless endangerment was placed on the statute books of Maryland in 1989, it filled a gap in a theretofore neglected quadrant of a conceptually simple matrix:

| | Non–Intentional | Intentional |
|---|---|---|
| Non-Consummated | HARM UNINTENDED AND UNCONSUMMATED (but risked) | HARM INTENDED BUT UNCONSUMMATED |
| Consummated | HARM UNINTENDED BUT CONSUMMATED | HARM INTENDED AND CONSUMMATED |

When we fill the quadrants with representative, but not necessarily exhaustive, sets of crimes, we have a matrix that looks like this:

| | Non–Intentional | Intentional |
|---|---|---|
| Non–Consummated | RECKLESS ENDANGERMENT | SOME ATTEMPTS, SOME AGGRAVATED ASSAULTS |
| Consummated | DEPRAVED HEART MURDER, INVOLUNTARY MANSLAUGHTER, SOME UNINTENDED BATTERIES | INTENTIONAL MURDER, VOLUNTARY MANSLAUGHTER, MAYHEM, ETC. |

### 1. Merger: An Escalating Actus Reus

As a doubly inchoate crime, reckless endangerment may move one step closer to the actuality of consummated and intended harm in either of two directions. In terms of the *actus reus*, reckless endangerment does not require, of course, that any harm actually be inflicted on a victim. It is enough that a substantial risk or threat of such harm be created and then consciously disregarded. If one additional element were added to the *actus reus*, however, and actual harm to the endangered victim should come to pass, there are several possibilities for the greater inclusive crime into which the reckless endangerment might then merge.

### a. Where the Harm Is Fatal

If the victim should die as a result of the harm inflicted, that homicide, albeit unintended, might well qualify either as second-degree murder of the depraved-heart variety or as involuntary manslaughter of the gross criminal negligence variety. The borderline between those two is, in the present state of our case law, a very blurred line. Of this uncertain boundary, 2 Wayne R. LaFave and Austin W. Scott, *Substantive Criminal Law* § 7.4 (2d ed. 1986), has observed at 200–201:

> The distinctions between an unreasonable risk and a high degree of risk and a very high degree of risk are, of course, matters of degree, and there is no exact boundary line between each category; they shade gradually like a spectrum from one group to another. Some have thus questioned whether this is a sound basis upon which to make the important distinction between murder and manslaughter. (footnotes omitted).

In Maryland, we have defined involuntary manslaughter of the gross-criminal-negligence variety in such a way as to embrace the *mens rea* of reckless endangerment. Chief Judge Murphy (now Chief Judge of the Court of Appeals), in *Mills v. State*, 13 Md.App. 196, 200, 282 A.2d 147 (1971), *cert.*

*denied,* 264 Md. 750 (1972), provided the best analysis we have yet had of that necessary state of mind:

It is well settled in this State that where a charge of involuntary manslaughter is predicated on negligently doing some act lawful in itself, *the negligence necessary to support a conviction must be gross or criminal, viz., such as manifests a wanton or reckless disregard of human life.* (emphasis supplied).

*See also Allison v. State,* 203 Md. 1, 5, 98 A.2d 273 (1953) ("Even an unintentional killing may constitute the crime of manslaughter if it is due to a wanton and reckless disregard of human life"); *Hughes v. State,* 198 Md. 424, 84 A.2d 419 (1951); *Neusbaum v. State,* 156 Md. 149, 155, 143 A. 872 (1928). In *Johnson v. State,* 213 Md. 527, 531, 132 A.2d 853 (1957), Chief Judge Brune focused on the subject of gross criminal negligence. He reviewed the earlier Maryland decisions of *Hughes v. State,* 198 Md. 424, 84 A.2d 419 (1951); *Duren v. State,* 203 Md. 584, 102 A.2d 277 (1954); *Thomas v. State,* 206 Md. 49, 109 A.2d 909 (1954); *Clay v. State,* 211 Md. 577, 128 A.2d 634 (1957); and *Lilly v. State,* 212 Md. 436, 129 A.2d 839 (1957), and concluded:

These cases have uniformly recognized that in order to constitute gross negligence, the conduct of the defendant must be such as to amount to *a wanton or reckless disregard for human life* or for the rights of others. (emphasis supplied).

213 Md. at 531, 132 A.2d 853. *See also Chase v. Jenifer,* 219 Md. 564, 569, 150 A.2d 251 (1959); *Craig v. State,* 220 Md. 590, 597, 155 A.2d 684 (1959); *Palmer v. State,* 223 Md. 341, 352, 164 A.2d 467 (1960); *McFadden v. State,* 1 Md.App. 511, 517, 231 A.2d 910, *cert. denied,* 247 Md. 741 (1967); *Morris v. State,* 4 Md.App. 328, 332–333, 242 A.2d 582 (1968).

In *State v. Gibson,* 4 Md.App. 236, 242–243, 242 A.2d 575 (1968), *aff'd,* 254 Md. 399, 254 A.2d 691 (1969), Chief Judge Murphy had on an earlier occasion looked at the quality of gross criminal negligence:

It is equally well settled that the Legislature, in enacting Section 388, making it a misdemeanor to cause the death of another as a result of operating an automobile "in a grossly negligent manner," intended to adopt this same standard of gross negligence (a wanton or reckless disregard of human life) as the minimum requirement to support a conviction for this statutory offense.

*See also Rolfes v. State*, 10 Md.App. 204, 207, 268 A.2d 795 (1970).

There is little distinction between that *mens rea* and the *mens rea* of depraved-heart murder. Other than substituting "extreme disregard" for "wanton or reckless disregard," the Maryland Pattern Jury Instructions—Criminal 4:17.8 defines the *mens rea* of depraved-heart murder in virtually the same language the case law uses to describe the *mens rea* of grossly negligent manslaughter:

Second degree murder is the killing of another person while acting with an extreme disregard for human life. In order to convict the defendant of second degree murder, the State must prove:

(1) that the conduct of the defendant caused the death of [victim];

(2) that the defendant's conduct created a very high degree of risk to the life of [victim]; and

(3) that *the defendant, conscious of such risk, acted with extreme disregard of the life-endangering consequences.* (emphasis supplied).

The leading case in Maryland on the subject of depraved-heart murder is *Robinson v. State*, 307 Md. 738, 517 A.2d 94 (1986). In terms of its *mens rea*, Judge Adkins observed, 307 Md. at 744–745, 517 A.2d 94:

It is one of the "unintentional murders," *Glenn v. State*, 68 Md.App. 379, 386, 511 A.2d 1110, 1114 (1986), that is punishable as murder because another element of blameworthiness fills the place of intent to kill. As [was] explained in *Debettencourt v. State*, 48 Md.App. 522, 530, 428 A.2d 479, 484 (1981):

"It ['depraved heart' murder] is the form [of murder] that establishes that the wilful doing of a dangerous and reckless act with wanton indifference to the consequences and perils involved, is just as blameworthy, and just as worthy of punishment, when the harmful result ensues, as is the express intent to kill itself. This highly blameworthy state of mind is not one of mere negligence.... It is not merely one even of gross criminal negligence.... It involves rather the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not. The common law treats such a state of mind as just as blameworthy, just as anti-social and, therefore, just as truly murderous as the specific intents to kill and to harm."

. . . . .

*The critical feature of "depraved heart" murder is that the act in question be committed "under circumstances manifesting extreme indifference to the value of human life."* 2 *Wharton's Criminal Law* § 143 at 197 (14th ed. 1979). The terms "recklessness" or "indifference," often used to define the crime, do not preclude an act of intentional injury. (footnote omitted) (emphasis supplied).

A reckless endangerment resulting in death will constitute either a grossly negligent involuntary manslaughter or a depraved-heart second-degree murder. In either event, the reckless endangerment will merge into the greater inclusive criminal homicide. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

### b. Where the Harm is Not Fatal

When, by way of additional *actus reus*, the unconsummated harm that is recklessly risked ripens into consummated harm that is actually inflicted but with nonfatal consequences, there is a crime to handle the situation. It is battery, but of the unintended variety. The recognition of unintended battery as a form of battery is a relatively recent development. It

emerged essentially from the shadows of grossly negligent involuntary manslaughter (and to some extent from the shadows of depraved-heart murder) as a nonlethal analogue for situations where the victim was wounded but did not die. *See* Comment, *Criminal Assault Through Negligence—Bonding Automobile Drivers*, 22 Mich.L.Rev. 717 (1924); Rollin M. Perkins, *Non–Homicide Offenses Against the Person*, 26 B.U.L.Rev. 119 (1946). Livingston Hall, *Assault and Battery By The Reckless Motorist*, 31 J.Crim.L. & Criminology 133, 134 (1940), traced the early development of this form of unintended battery:

> *The law of battery developed* during the latter half of the 19th century along common law principles, *from intent to recklessness, in the same manner as the law of manslaughter (and in cases of extreme recklessness, of murder) had unfolded two centuries earlier.* The coming of the automobile, and the desire of prosecutors for heavier penalties than many reckless driving statutes permit, have done no more than provide numerous modern instances of this development. (emphasis supplied).

The first Maryland decision to recognize unintended battery was *Duckworth v. State,* 323 Md. 532, 540–544, 594 A.2d 109 (1991). The thoroughly researched and well-reasoned opinion of Judge Rodowsky analyzed why the evidence was legally sufficient to sustain a conviction for battery in a case where the defendant was handling a firearm in a criminally negligent manner and unintentionally wounded a child thereby. Judge Rodowsky reasoned:

> [T]he act of pointing a firearm at a nearby human being, without being certain that the weapon will not discharge, generally is *sufficiently reckless to support a conviction for involuntary manslaughter* where the unintended discharge of the weapon results in death. Similarly, here, where the discharge of the weapon resulted in a wounding short of death, *the same degree of recklessness supports the battery conviction.* (emphasis supplied).

*Id.* at 542, 594 A.2d 109. *Duckworth,* 323 Md. at 541, 594 A.2d 109, quoted with approval *Commonwealth v. Hawkins,* 157 Mass. 551, 32 N.E. 862, 863 (1893):

> It is a general rule in criminal proceedings at common law that the defendant cannot be convicted unless a criminal intent is shown, but it is not necessary that he should have intended the particular wrong which resulted from his act ... So, *in cases of homicide,* the rule is well established, that *one who wantonly, or in a reckless or grossly negligent manner, does that which results in the death of a human being, is guilty of manslaughter,* although he did not contemplate such a result. His gross negligence in exposing another to a personal injury by intentionally doing the act makes his intention criminal, and supplies all the intent which the law requires to make him responsible for the consequences. This principle is equally applicable to other cases where a personal injury results from *a wanton or reckless act which is likely to do bodily harm, or from any gross negligence which causes the danger.* In the case at bar, if Mary A. Powers had died from the pistol shot, the defendant, on the facts found by the jury, would have been guilty of manslaughter. As she survived the injury, the same principle now requires a conviction of assault and battery. (emphasis supplied).

*Cf. Mills v. State,* 13 Md.App. 196, 199–201, 282 A.2d 147 (1971); Annotation, *Homicide by Wanton Or Reckless Use of Firearm Without Express Intent to Inflict Injury,* 5 A.L.R. 603, 610–619 (1920), 23 A.L.R. 1554, 1556–1557 (1923). Indeed, the holding in the *Duckworth* case was that recklessness or gross negligence was in that case a sufficient predicate for a conviction for an unintended battery:

> Thus, the State's theory of the case on the battery charge was legally sound, namely, that Duckworth criminally wounded Mandy by *recklessly* handling a firearm. (emphasis supplied).

323 Md. at 544, 594 A.2d 109.

*Lamb v. State,* 93 Md.App. 422, 455, 613 A.2d 402 (1992), *cert. denied,* 329 Md. 110, 617 A.2d 1055 (1993), also pursued

the theme that unintended battery was the nonlethal analogue of depraved-heart murder or grossly negligent involuntary manslaughter:

The unintended harm, if death results, may be unintended murder if the indifference to the consequences is sufficiently wanton and reckless to constitute depraved-heart murder. If the state of mind is less than depraved but still a case of gross criminal negligence, it is involuntary manslaughter. At the nonfatal level, it is unintended battery.

Maryland Criminal Pattern Jury Instruction 4:04 recognizes that battery may be intentional or unintentional but recognizes the latter as criminal only when the defendant's conduct can be characterized as "reckless." MPJI–Cr 4:04(2) provides:

that the contact was the result of an intentional or reckless act of the defendant and was not accidental ...

To determine whether reckless endangerment and unintended battery are "the same offense" within the contemplation of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), it is necessary to compare the respective sets of required elements. Unintended battery (as all battery) requires that the harm or offensive touching be not simply *in potentia* but *in esse.* That is not an element of reckless endangerment. The issue is whether the crime of reckless endangerment contains any additional or unique element not required to prove an unintended battery.

The *Blockburger* comparison is problematic because the crime of unintended battery has not yet emerged from the future mists with sufficient clarity to permit fine calibration. At the *mens rea* level, however, it does seem that the quality of recklessness required for reckless endangerment is indistinguishable from the quality of recklessness required for unintended battery.

What is less sure is whether the creation of "a substantial risk of death or serious bodily harm" that is part of the *actus reus* of reckless endangerment goes beyond the degree of risk or threat of harm implicitly contemplated by the recklessness

necessary to convict one of unintended battery. If unintended battery is, indeed, nothing more than the nonfatal analogue of unintended criminal homicide, there may be no distinction. It is by no means clear, however, that unintended battery is not broader in its sweep. MPJI–Cr 4:04, for instance, does not seem to draw a distinction between the degree of harm that may be the result of an unintended battery and the broad sweep of offensive touching and nonserious harm that is the *actus reus* of intentional battery:

The defendant is charged with the crime of battery. In order to convict the defendant of battery, the State must prove:

(1) that the defendant caused [offensive physical contact with] [physical harm to] [victim] . . .

It may well be that the potential harm contemplated by the reckless endangerment statute is of a far more serious degree and, therefore, more limited than the more generalized harm punished by the common law crime of unintended battery.

Thus, although a reckless endangerment that results in the infliction of actual nonfatal harm may represent an instance of unintended battery, reckless endangerment, as a necessary antecedent or inchoate condition, may by no means preempt the field of unintended battery. If that be the case, it is because reckless endangerment contains a unique required element not shared by unintended battery. Some, but not necessarily all, unintended batteries are consequences of reckless endangerments. If that be so, the two crimes are not "the same offense" within the contemplation of double jeopardy law and merger would not be constitutionally mandated.

It is also clear, however, that even if the crime of reckless endangerment and the crime of unintended battery are not "the same offense," multiple punishment will nonetheless be prohibited and merger will still be required in those particular instances where the inchoate crime of reckless endangerment has ripened into an instance of the consummated crime of unintended battery. *Monoker v. State*, 321 Md. 214, 223–224, 582 A.2d 525 (1990). Although the *Monoker* principle is by no

means free of doctrinal ambiguity, it does hold that as a "principle of fundamental fairness" under the common law of Maryland, it is "fundamentally unfair to [a defendant] for [the law] to require him to suffer twice, once for the greater crime and once for the lesser included offense of that crime. For that reason, his sentences should merge." *Id.* at 223–224, 582 A.2d 525. Even though the Court uses the language of double jeopardy to describe a situation which it candidly acknowledges does not involve double jeopardy, the outcome at least is clear. For whatever reason, there will be a merger. The crime involving potential harm will merge into the crime involving actual harm on an *ad hoc* basis, even if not as a universal principle of double jeopardy law. The *Monoker* rule handles the problem of merging into a consummated crime an antecedent crime that is inchoate in fact even if not inchoate in law.

### 2. Merger: An Escalating Mens Rea

As a doubly inchoate crime, reckless endangerment may move one step closer to the actuality of consummated and intended harm in a very different direction—along the line of an escalating *mens rea* instead of along the line of an escalating *actus reus*. The *actus reus* of reckless endangerment is the creation of a substantial risk of death or serious bodily harm to another. The *mens rea* of recklessness involves the conscious disregard or wanton indifference to the creation of such a risk. To move from reckless endangerment, where one is simply indifferent to the threat to the victim, to one of the more malicious crimes where death or serious bodily harm is affirmatively desired or specifically intended—such as attempted murder, attempted manslaughter, attempted mayhem, assault with intent to murder, assault with intent to maim, etc.—primarily involves racheting the *mens rea* up to the next level of blameworthiness.

### a. A Possible Increment to the Actus Reus

It may, coincidentally, also involve a minuscule racheting up of the *actus reus*. That would take care of some unusual, but

hypothetically still possible, situation where the creation of the substantial risk of death or serious bodily harm nonetheless still falls half a step short of conduct that would constitute an attempt or an assault. *See, e.g., Commonwealth v. Penn Valley Resorts, Inc.*, 343 Pa.Super. 387, 494 A.2d 1139 (1985). And see, *Minor v. State*, 326 Md. 436, 605 A.2d 138 (1992), where, even if a specific intent to kill had been present, the physical actions themselves arguably might not have supported a finding of an assault even if they might have supported a finding of an attempt. Even if the *actus reus* of the attempt or of the assault involves slightly more than the *actus reus* of reckless endangerment, however, the arguably greater *actus reus* would subsume the arguably lesser *actus reus* and would pose no impediment to the merger of reckless endangerment into one of the attempts or assaults involving a specific intent to inflict death or serious bodily harm.

### b. What Precisely is the Mens Rea?

Before addressing the ultimate issue of whether the *mens rea* of reckless endangerment is a lesser included mental state that may merge into the more blameworthy *mens rea* of assault with intent to maim, etc. (or assault with intent to murder or attempted murder or attempted manslaughter or attempted mayhem, etc.), it behooves us to examine a bit more closely than has heretofore been done the precise *mens rea* of reckless endangerment. As we have said, the only case law we have is 1) our decision in *Minor v. State*, 85 Md.App. 305, 583 A.2d 1102 (1991), 2) the affirming decision of the Court of Appeals in *Minor v. State*, 326 Md. 436, 605 A.2d 138 (1992), and 3) our cursory resume of those two decisions in *Albrecht v. State*, 97 Md.App. 630, 632 A.2d 163 (1993). *Albrecht* added nothing new to the analysis.

The only issue raised by the appellant Minor before both appellate courts was whether the risk of physical injury to another which he was required consciously to disregard must have been known by him to have been an *almost certain* risk of injury or could have been a mere risk of *possible* injury.

The Court of Appeals succinctly stated the appellant's contention, 326 Md. at 440–441, 605 A.2d 138:

This "awareness," according to the appellant, "involves more than merely an awareness of the circumstances which, in combination, form the risk." Instead, it is suggested that, in order to act recklessly under the statute, the actor must perceive that the risk is substantial and that he consciously disregarded it. Thus, appellant claims, *even if he was aware of the risk, but underestimated its seriousness, he is at most guilty of negligence for his misjudgment.* (emphasis supplied).

To some extent before the Court of Appeals, although not before us, there was intertwined the problem of whether Minor's conduct actually created the substantial risk that led to the victim's death or whether the victim's own voluntary conduct represented an independent intervening cause. *See Minor v. State,* 326 Md. 436, 444–449, 605 A.2d 138 (1992) (Bell, J., dissenting).

The potential problem area is that several sentences by the Court of Appeals, perfectly correct if tightly confined to the issue (or issues) before it, are susceptible of being read overbroadly if taken out of context. In opting for a so-called objective test rather than a subjective test, the Court did say, 326 Md. at 443, 605 A.2d 138:

We conclude that whether the accused's conduct, which created the substantial risk, was reckless under § 120(a) is a matter for objective determination, to be made by the trier of fact from all the evidentiary circumstances in the case. It is not, as appellant contends, a subjective determination predicated upon his actual perception or state of mind as to whether his conduct created a substantial risk of death or physical injury.

That can and probably will be heady wine for many a careless and casual reader. The casual reader will announce triumphantly, "Aha, Maryland has adopted the objective test for the crime of reckless endangerment!" At that point, the law is in trouble. The "objective test" for what? The casual

reader may think he has an answer, but he has no idea as to what the question is. The answer "objective test" could apply to any of five different questions. The objective-subjective dichotomy could refer to any of five different issues. The danger is that the hearer or reader who is conscious only of an answer will unthinkingly misapply that answer to the wrong question. At a deeper level, the problem is that the hearer or reader will not even suspect that there could be more than one question.

What must be done, in probing for the meaning of *Minor*, is to identify the five possible questions that could give rise to whether some objective or some subjective assessment should be made. In then deciding which question was before the Court and which question, therefore, was answered, we must identify the precise contention that the appellant Minor raised both before us and before the Court of Appeals. We must then look to what Judge Bishop said for this Court, for it was that decision on which *certiorari* was granted and it was his opinion, as well as his decision, that was affirmed. Finally, we must look to the four decisions from New York, Kentucky, Vermont, and Pennsylvania on which the Court of Appeals relied as authority for its decision so that we may determine what the precise questions were as they came up with their respective answers that "the defendant's subjective contention is irrelevant." 326 Md. at 442, 605 A.2d 138.

The five possible issues that arguably give rise to some question of whether a subjective standard or an objective standard should be employed are:

1) In assessing whether the defendant's conduct has created a substantial risk of death or serious physical injury to another person, the question has arisen as to whether that *actus reus* of actual risk should be measured objectively by the physical facts in the case or should take into account the subjective state of mind of the defendant. Even if the defendant subjectively thinks that he has created such a risk and consciously disregards it, is that enough if the evidence shows objectively that the risk has not actually been created? (This was the secondary issue before the

Court of Appeals in *Minor* and the one that prompted the dissent by Judge Bell).

2) Granted that the *actus reus* of the actual creation of risk is to be objectively measured, does the *mens rea* of reckless endangerment require that the defendant subjectively intend harm to those he has put at risk or is it enough that, objectively measured, his conscious disregard of the risk represents a gross departure or gross deviation from the standard of conduct that a lawabiding person would observe?

3) Granted that a defendant need not entertain a specific intent to harm the persons placed at risk, he must at least, in order to be deemed reckless, consciously disregard the risk he has created. One purported standard holds that in order to be reckless, he must believe that the risk he consciously disregards is one of almost certain death or harm to the possible victims. This standard of risk is contrasted with the fourth standard listed below. The choice between the two is sometimes referred to, for some unknown reason, as a choice between a subjective standard and an objective standard.

4) Granted that a defendant, in order to be deemed reckless, consciously disregard the risk that he has created, is it enough that he be aware that his conduct *might* cause harm even though there is not a great or almost certain likelihood that the harm will occur? The choice between this standard and the third standard listed above, sometimes referred to strangely as a choice between an subjective and an objective standard, was the only issue before this Court in our *Minor* and the primary issue before the Court of Appeals in its *Minor*.

5) This fifth possibility represents the misbegotten and uncritical application of the answer "objective test" to a different question than the one which initially gave rise to the answer. It would essentially eliminate any *mens rea* from the crime of reckless endangerment. If the defendant is guilty of the *actus reus* of creating a substantial risk of death or serious physical injury to another person, nothing

further by way of any conscious disregard of that risk would be required. The defendant would be guilty if, objectively measured, ordinary prudent persons would not disregard such a risk. It would not matter whether the defendant consciously disregarded any risk or not.

Once we recognize, at the threshold, that in reckless endangerment cases there are multiple possible issues, we can effectively isolate them for closer and more particularized scrutiny.

### 1) The Actus Reus of Creating a Substantial Risk is Measured Objectively

■ The *actus reus* of the crime of reckless endangerment is "conduct that creates a substantial risk of death or serious physical injury to another person." Md.Ann.Code art. 27, § 120(a) (1992). Although in the brief life of reckless endangerment statutes, locally and nationwide, the question has been raised on a number of occasions, It is undisputed that the *actus reus* of creating a substantial risk is to be measured objectively, not subjectively. The *mens rea* of the defendant, although indispensable to an ultimate finding of guilt, has nothing to do with the establishment of the *actus reus*. Whether the conduct in issue has, indeed, created a substantial risk of death or serious physical injury is an issue that will be assessed objectively on the basis of the physical evidence in the case.

That a defendant thinks he is creating a risk which he then consciously disregards will not contribute to the establishment of the *actus reus*, if objectively it has not been proved. If, on the other hand, the defendant is oblivious to having created any risk and therefore has nothing to disregard, that will not denigrate from the establishment of the *actus reus*, if objectively it has been proved. On this issue, the fact finder is unconcerned with what is *subjectively* in the head of the defendant. The fact finder focuses *objectively* on historic events in the outside world. This is an occasion for the subjective-objective dichotomy.

This, moreover, was the precise secondary issue before the Court of Appeals in *Minor v. State.* Nelson Minor was arguing the absence of proximate causation, classically an *actus reus*-related argument. His thesis was that his conduct, however arguably ill-advised or reprehensible it may have been, was not the catalytic agent that *created* the substantial risk. He maintained that the substantial risk of harm was created exclusively by the victim's intervening act of putting the gun, which concededly had been handed to him by Nelson Minor, to his head and pulling the trigger. Although the argument of Nelson Minor did tend to wander at times back and forth across an unperceived doctrinal boundary, part of his attack on proximate causation was that the unforeseeable nature of the consequences prevented his conduct from being deemed reckless in the first instance and thereby foreclosed the possibility that the risk was somehow the product of his "reckless" conduct. His argument, in effect, was that his subjective inability to foresee and appreciate any risk denigrated from the proof of the *actus reus* itself.

In rephrasing, 326 Md. at 441, 605 A.2d 138, this secondary contention or question raised by *Minor* before proceeding to answer it, the Court of Appeals recognized that it was an issue involving proximate cause, an issue involving the establishment of the *actus reus* of the crime:

> As to causation, the appellant says that *the question is whether his conduct can fairly be said to have created a substantial risk* within the contemplation of § 120(a). *Guilt* of the offense, he says, *depends* not upon harm being caused but *only upon creation of a risk* of harm. As to this, *he says that the victim* was not just a willing participant in the occurrence but indeed *created the risk itself.* He says that *merely handing his brother the loaded gun,* and daring him to use it, *did not create a risk* that his brother would in fact do so, since his brother was in complete control of the gun. (emphasis supplied).

In assessing, therefore, the ultimate answer of the *Minor* opinion that "the test is objective," it must be remembered that this was the question to which the answer applied. It

was in this context that the Court of Appeals answered, 326 Md. at 442, 605 A.2d 138:

There is no indication in § 120(a) that the State, to obtain a conviction, must establish that the accused was actually aware that his risk-creating conduct was reckless and that he consciously disregarded the risk.

We must guard against the ever-present danger that that answer will be slapped onto some other question that was not asked. Indeed, immediately after making the statement quoted above, the Court of Appeals cited as authority for its position the case of *People v. Davis*, 72 N.Y.2d 32, 530 N.Y.S.2d 529, 526 N.E.2d 20 (1988). That was a case in which the New York Court of Appeals held that the *actus reus* of risk creation had not occurred, notwithstanding the defendant's aiming and attempting to fire a gun, because the gun was inoperable. The test for measuring the establishment of the *actus reus*, therefore, was objective and not subjective. Our Court of Appeals summarized, 326 Md. at 442, 605 A.2d 138, the New York decision:

[T]he court, in interpreting New York's reckless endangerment statute, held that *the defendant's subjective intention is irrelevant.* The court said that reckless endangerment was defined in the statute in terms of the risk produced by the defendant's conduct and not intent. The determination whether the crime has been committed, the court concluded, entails an objective assessment of the degree of risk presented by the defendant's reckless conduct. (emphasis supplied).

A close look at the *Davis* case is instructive, particularly in terms of what that court had in mind when it said that a "defendant's subjective intention is irrelevant." Davis had been convicted in the trial court of reckless endangerment. That conviction was overturned by the intermediate Appellate Division because the evidence showed that, notwithstanding the fact that Davis had taken a "combat stance" in aiming a gun at a policeman and pulling the trigger, the gun was at that point inoperable and as a result no risk had actually been

created. In rejecting the prosecution's appeal, the New York Court of Appeals made it clear that the only issue was the establishment of the *actus reus*:

> To decide the People's appeal we need only answer a narrow question: does pointing a gun at another and pulling the trigger constitute reckless endangerment when a jammed cartridge prevents the gun from firing? We conclude that *such conduct does not,* in the words of the statute, *"create a grave risk of death to another."* (emphasis supplied).

530 N.Y.S.2d at 530, 526 N.E.2d at 21. The Court of Appeals elaborated on the necessity that a risk actually be created:

> Moreover, even if a gun is fired, that standing alone, is not enough to constitute commission of the crime. *The use of the gun must create a risk.* Thus, it has been held that shooting a pistol into the air or in the general direction of a roadway but considerably short of it does not constitute reckless endangerment. In this case, the evidence established that *although defendant pulled the trigger his gun did not fire and thus his conduct could not create a risk of death* to Officers Freeman and Farley. (citations omitted) (emphasis supplied).

530 N.Y.S.2d at 531, 526 N.E.2d at 22.

The question of the intent of the defendant took on significance when the prosecution attempted to argue that the impossibility of achieving the harmful result should not be a defense. The New York Court of Appeals responded that the impossibility doctrine will, indeed, not be a defense where there is a specific intent to harm but that reckless endangerment does not involve such a specific intent to harm:

> [The People] ask, in effect, that the impossibility doctrine be invoked to hold defendant guilty of reckless endangerment because he tried to shoot the officers even though it was impossible for him to do so.
>
> Legal or factual impossibility will not provide a defense to a prosecution for attempted intentional acts because the offense consists of deliberately performing a prohibited act

and impossibility does not negate intent. Reckless endangerment, however, is defined in terms of the risk produced by defendant's conduct, not intent, and factual impossibility eliminates the risk essential to commission of the crime. (citations omitted).

530 N.Y.S.2d at 531–32, 526 N.E.2d at 22. It was in the context of pointing out that reckless endangerment did not involve a specific intent to harm that the New York court used its language about making an objective assessment:

Like higher crimes having recklessness as an element, reckless endangerment is not an intent crime. Instead, determining whether the crime was committed entails "an objective assessment of the degree of risk presented by defendant's reckless conduct."

530 N.Y.S.2d at 531, 526 N.E.2d at 21–22.

Even in holding, however, that 1) the establishment of the *actus reus* of actually creating a risk will be assessed objectively and 2) that a specific intent to harm on the part of the defendant is irrelevant, the New York Court of Appeals by no means said that there was no *mens rea* to the crime of reckless endangerment or that the subjective *mens rea* of the defendant on trial was irrelevant. Quite to the contrary, that court pointed out that it is still necessary that the defendant 1) be aware of a risk and 2) disregard that risk:

A person acts recklessly *when he is aware of, but disregards,* a substantial and unjustifiable risk to the degree that his behavior does not comport with the manner in which a reasonable person would have acted under the circumstances. (emphasis supplied).

530 N.Y.S.2d at 530, 526 N.E.2d at 21.

A second of the four cases relied on by our Court of Appeals in *Minor* was *State v. McLaren,* 135 Vt. 291, 376 A.2d 34 (1977). It also spoke of applying an objective test to a reckless endangerment case. It was a case, however, dealing exclusively with establishing the *actus reus* of "danger of death or serious bodily harm." The holding was that the issue of whether a firearm was unloaded or otherwise inoperative

was a factor in making the objective determination of whether a risk or danger had actually been created:

> Whether the firearm was unloaded or was otherwise inoperative is an essential issue in determining whether the victim was placed in an *objective* state of danger of death or serious bodily harm. The evidence in this case presented a factual issue for the jury's determination as to whether the victim had been placed in an *objective* state of danger of death or serious bodily harm. (citations omitted) (emphasis supplied).

376 A.2d at 36.

Thus, *Minor v. State* stands for the proposition that in establishing the *actus reus* of creating a substantial risk of death or serious bodily harm to another, an objective test will be employed. The intent of the defendant, be it great or small—in a larger sense the *mens rea* of the defendant—is, whether measured subjectively or objectively, on that particular issue completely irrelevant. It is not irrelevant, of course, on the ultimate issue of guilt or innocence. It is only irrelevant on the sub-issue of whether the *actus reus* has been established.

### 2) *The Mens Rea Does Not Involve Any Subjective Intent to Inflict Harm*

In a sense, the injection of the adjectives "subjective" and "objective" into a discussion of the *mens rea* of reckless endangerment is unfortunate. Whether that *mens rea* involves a large measure of blameworthiness, such as a specific intent to inflict harm, or a smaller measure of blameworthiness, such as a conscious disregard or wanton indifference as to the risk of harm, the distinction between a greater *mens rea* and a lesser *mens rea* has nothing to do with whether the measurement is subjective or objective. If there is a *mens rea*, be it great or small, it must be measured subjectively in terms of the defendant on trial. From one's outward conduct, a fact finder may, of course, draw a permitted inference as to his state of mind, but the state of mind inferred is still a

subjective phenomenon. Whether the modality of proof be direct or indirect, the subjective quality of the thing proved is not affected by the manner of its proof.

■ It is undisputed that a specific intent to do harm is not part of the *mens rea* of reckless endangerment. Maryland's reckless endangerment statute, as all reckless endangerment statutes, spells out expressly what the *mens rea* of the crime is. It is required that the defendant's conduct be "reckless." "Reckless" describes a mental state or a *mens rea*. Before inquiring further into what that *mens rea* is, it is appropriate to state what it is not. It is not a specific intent to inflict harm.

This is all that the New York Court of Appeals meant to say in *People v. Davis*, 72 N.Y.2d 32, 530 N.Y.S.2d 529, 531, 526 N.E.2d 20, 22 (1988), when it stated that "the defendant's subjective intent is irrelevant." It meant that whether a defendant had any specific intent to harm or not was irrelevant. It did not, however, mean that the defendant's state of mind was irrelevant. The only caution that is necessary in reading the case is the reminder that by "subjective intent," the New York Court of Appeals meant nothing more than the specific intent to harm and not the state of mind of the defendant generally.

In moving on to the more subtle *mens rea* problem, our *Minor v. State,*9 noted in passing, 85 Md.App. at 316, 583 A.2d 1102, "To commit a crime of reckless endangerment, however, a defendant need not intentionally cause a result...." We found the law around the country to be of similar import. "Other jurisdictions with analogous statutes have similarly held that the offense of reckless endangerment is not dependent upon intent." *Id.* We cited *People v. Graham,* 41 A.D.2d 226, 342 N.Y.S.2d 361 (1973), where the New York Appellate Division affirmed a reckless endangerment conviction, observing that the defendant's lack of intent to injure his victim was irrelevant. Indeed, the third of the four cases relied on by the Court of Appeals, *Hennemeyer v. Commonwealth,* 580 S.W.2d 211, 215 (Ky.1979), sought only to distin-

guish the specific intent necessary for an assault or an attempted assault from the lack of any such requirement of specific intent in the case of what Kentucky calls wanton endangerment:

> We find it significant that intent is a necessary element of the offense of assault or attempted assault. The offense of wanton endangerment is not dependent upon intent.

Once again, that does not mean that there is no required *mens rea*; it only means that that *mens rea* does not include any specific intent.

### 3) *How Great Must the Risk Be that is Consciously Disregarded?*

The third and fourth issues may conveniently be considered together, for what is involved is the choice between two closely-related standards for measuring the *mens rea* of reckless endangerment.

The Maryland Reckless Endangerment Statute, article 27, § 120, is obviously modeled on § 211.2 of the Model Penal Code. Both provide that a person is guilty of the misdemeanor of reckless endangerment if he:

| Article 27<br>Section 120 | Model Penal Code<br>Section 211.2 |
| --- | --- |
| recklessly engages in conduct | recklessly engages in conduct |
| that creates a substantial risk of | which places or may place another person in danger of |
| death or serious physical injury to another | death or serious injury |

The critical word, indeed the only word, that bears on the *mens rea* of the crime is the adverb "recklessly." Although Chief Judge Murphy pointed out, 326 Md. at 442 n. 1, 605 A.2d 138, that Maryland has not adopted the Model Penal Code's definition of "reckless," there is nothing in that definition that is at all incompatible with the Court of Appeals opinion in *Minor*. Judge Bishop had recognized the persuasive authority of § 2.02(2)(c) of the Model Penal Code when he, 85 Md.App. at 315, 583 A.2d 1102, quoted it with approval:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

 It is here, at the assessment of the critical term "reckless," that the so-called subjective-objective dichotomy poses the greatest threat of confusion and misunderstanding. It is because the seemingly, but not actually, indivisible concept of recklessness contains not one element but two, one of which is measured subjectively and the other of which is measured objectively. Reckless endangerment is a crime that has not eliminated the requirement of a *mens rea*. It is not a strict liability crime. One is not guilty if he is oblivious to the fact that there is a risk and oblivious to the fact that he is disregarding a risk; it is not enough that the ordinary prudent person would be thus aware. It is required that the defendant on trial be aware of a risk and then consciously disregard it. That much is indisputably subjective. In shortest form, the critical *mens rea* would be "the conscious disregard of a substantial risk." "Conscious disregard" is *ipso facto* subjective.

Where the objective measurement insinuates itself into the amalgam is when we come to the inextricably related question of what is the thing that must be consciously disregarded. It is not all risk. It is only a "substantial risk." When one drives to the office in the morning, there is always a one-in-a-million chance that some child will dart in front of the car or that some cyclist will unexpectedly fall directly in one's path. To accept such a risk, however, is not reckless endangerment. What is required is that the risk be "substantial."

 It is in measuring that substantiality of the risk that an objective test is involved. Although the defendant must

subjectively have known of some risk and have consciously disregarded it, the defendant need not subjectively have assessed the risk as being substantial. That is a thing to be objectively measured. If the defendant subjectively believes the risk not to be substantial but, objectively measured, it is deemed substantial, the objective measurement is the only one that counts. It must always carefully be remembered, however, that the objective test goes only to the sub-issue of whether the risk is, indeed, substantial. It does not eliminate the necessity of a subjective awareness of some risk and a subjective and conscious disregard of that risk. A defendant must subjectively disregard a risk that is objectively substantial. Finely parsed, that is what both this Court and the Court of Appeals said in *Minor*.

Actually, to qualify a defendant as "reckless," it is necessary that the risk that is consciously disregarded be, objectively measured, not only quantitatively substantial but also qualitatively unjustified. Although this second characteristic of the risk is less frequently the subject of litigation, it remains a necessary component of recklessness. In this regard, the Commentary to the Model Penal Code noted:

Under Section 2.02, the actor must perceive and consciously disregard a *substantial and unjustifiable risk* that his action will or may place another in danger of death or serious injury. Further, the nature and purpose of the actor's conduct and the circumstances known to him must be such that his disregard of the risk amounts to "a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation." *This requirement excludes from liability under this section both unconscious risk creation and conscious endangering where the circumstances justify such conduct.* Thus, for example, violently shoving a child down a railroad embankment may involve risk of serious injury. Such conduct would not be covered, however, if it were done in order to avoid the immediate prospect of more serious harm from an approaching locomotive. In this case, *the risk, even though*

*substantial, is not unjustifiable.* (footnote omitted) (emphasis supplied).

Model Penal Code and Commentaries § 211.2, at 203 (Official Draft and Revised Comments 1985).

The more frequently litigated required characteristic of the risk is that it be quantitatively substantial. It is generally agreed that this does not require that the risk be almost certain to occur or that there is even a heavy probability that the undesired result may come about. It is enough to know that one has created an unnecessary risk that his conduct *might* cause the harmful result. In this regard, our *Minor v. State,* 85 Md.App. at 316, 583 A.2d 1102, quoted with approval Wayne LaFave and Austin W. Scott, *Substantive Criminal Law* § 3.7(f) (1989):

One may act recklessly if he drives fast through a thickly settled district though his chances of hitting anyone are far less than 90%, or even 50%. Indeed, if there is no social utility in doing what he is doing, one might be reckless though the chances of harm are something less than 1%. Thus, while "knowledge" and the knowing-type of "intention" require a consciousness of almost-certainty, *recklessness requires a consciousness of something far less than certainty or even probability.* (emphasis supplied).

This was the question that was literally before us in our *Minor v. State.* There was no question but that the appellant had to be subjectively aware that he was disregarding *some* risk. The only issue was whether the appellant had to perceive that the risk he disregarded was one that was almost certain to occur or whether it was sufficiently reckless to disregard the risk that his conduct could possibly cause the harmful result. We opted, 85 Md.App. at 316, 583 A.2d 1102, for the latter standard:

To commit the crime of reckless endangerment, however, a defendant need not intentionally cause a result or know that his conduct is substantially certain to cause a result. " 'Recklessness' in causing a result exists when one is aware

that his conduct *might* cause the result, though it is not substantially certain to happen." (emphasis in original).

We did, indeed, refer to the conscious disregard of a perceived lesser risk, in contrast to the conscious disregard of a perceived greater risk, as a standard that is "primarily objective":

The substance of the term "recklessness", as provided by LaFave & Scott and the Model Penal Code, is *primarily objective*. All that is required is that the defendant consciously disregard a substantial risk even if the chances of harm are improbable. (emphasis supplied).

85 Md.App. at 316 n. 4, 583 A.2d 1102.

For something to be *primarily* objective implies, on the other hand, that it may be *secondarily* subjective. The awareness of *some* risk and then the conscious disregard of that risk must, as a matter of course, be subjective. Whether the risk that is known and then disregarded is *substantial,* however, is to be measured objectively. If the disregarding of such a risk would represent a gross deviation or gross departure from the standard of conduct that a law-abiding person would observe in the actor's situation, then the risk, objectively measured, is *ipso facto substantial.* If, on the other hand, the disregarding of such a risk would *not* represent a gross deviation or a gross departure from the standard of conduct that a law-abiding person would observe in the actor's situation, then, objectively measured, it *ipso facto* is *not substantial.* The *mens rea* of reckless endangerment, thus parsed, has both a subjective and an objective component. It is the subjective disregard of an objective phenomenon.

Our holding in *Minor* was clear that the appellant was aware of at least some degree of lesser risk and then consciously disregarded it:

[E]ven though appellant believed that Kenneth Minor was "bullshitting" him and would not pull the trigger, appellant was aware that his conduct, handing the loaded shotgun to Kenneth Minor following the foregoing conversation, *might* cause death or serious bodily injury. (emphasis in original).

85 Md.App. at 319, 583 A.2d 1102. Our ultimate holding was equally clear that the disregarding of such a lesser risk nonetheless

> constitutes conduct that created a substantial risk of death or serious physical injury. Appellant consciously disregarded the substantial and unjustifiable risk. . . .

85 Md.App. at 317, 583 A.2d 1102.

If our emphasis in *Minor* was more upon the objective component than on the subjective component of the two-pronged test, it was so for the obvious reason that the issue before us was not whether a conscious disregard of some risk had or had not occurred but, rather, on whether the risk that was concededly disregarded was or was not substantial. That is the component that has to be objectively measured, and that is the only component that was being discussed.

That, moreover, was indisputably the precise holding of this Court that the Court of Appeals in its *Minor* granted *certiorari* to review:

> [T]he intermediate appellate court held that to commit the crime of reckless endangerment under § 120(a), "a defendant need not intentionally cause a result or know that his conduct is substantially certain to cause a result." Rather, the court said that " ' "[r]ecklessness" in causing a result exists when one is aware that his conduct *might* cause the result, though it is not substantially certain to happen.' " The court determined that the statutory test was primarily objective, and not subjective—that all that is required is that the defendant consciously disregard a substantial risk, even if the chances of harm are improbable. It thus held that the offense of reckless endangerment under § 120(a) "is not dependent upon intent." (citations omitted) (emphasis in original).

326 Md. at 439, 605 A.2d 138.

Before the Court of Appeals, Nelson Minor argued precisely that narrowly focused issue. He conceded that he had to have an awareness of some risk and then a conscious disregard of that risk. His argument was that he had to be aware of the

further fact that the risk was high or substantial. The Court of Appeals summarized his contention, 326 Md. at 440–441, 605 A.2d 138:

This "awareness," according to appellant, "involves more than merely an awareness of the circumstances which, in combination, form the risk." Instead, it is suggested that, in order to act recklessly under the statute, the actor must perceive that the risk is substantial and that he consciously disregarded it. Thus, appellant claims, even if he was aware of a risk, but underestimated its seriousness, he is at most guilty of negligence for his misjudgment.

In this context, it is clear that the holding of the Court of Appeals was that the narrow question of *whether a substantial risk has been created* is something to be assessed objectively by the "gross departure from the law-abiding person" standard and is not in any way dependent upon the defendant's subjective perception as to the substantial nature of the risk:

*It is not,* as appellant contends, *a subjective determination predicated upon his actual perception or state of mind as to whether his conduct created a substantial risk* of death or physical injury. In other words, *it is not the accused's subjective expectation of what his risk-creating conduct would entail* that is determinative. As the Court of Special Appeals held, *guilt* under the statute *does not depend upon whether the accused intended that his reckless conduct create a substantial risk* of death or serious injury to another. The test is whether the appellant's misconduct viewed objectively, was so reckless as to constitute a gross departure from the standard of conduct that a law-abiding person would observe, and thereby create the substantial risk that the statute was designed to punish. (emphasis supplied).

326 Md. at 443, 605 A.2d 138.

It is clear in the limited context of that narrowly framed issue that every rejection by the Court of Appeals of the "subjective perception of" and every affirmation of the "objective test for" had as the object of those prepositional phrases:

"a substantial risk." What was rejected was not all subjectivity but rather the idea that there had to be a subjective perception that the risk was substantial. What was affirmed was not objectivity across the board but rather an objective test for whether the risk was, indeed, substantial. It was, moreover, the holding to that effect of this Court that was being affirmed, as the Court of Appeals began its conclusory summation with the words "As the Court of Special Appeals held ..." Any answer of "objective test" and any language about an objective test, therefore, must be read in the context of the precise question that was before the Court.

### 4) There is Still a Subjective Mens Rea

From all of the above, it follows that language from the *Minor* opinions about an objective test for reckless endangerment must not be read so uncritically and overbroadly as to eliminate a *mens rea* from the crime. Reckless endangerment is not a *malum prohibitum.* It requires a *mens rea* and that *mens rea*, by definition, must be measured subjectively. It is still required that a defendant know of some, albeit minimal, risk and that the defendant consciously disregard such risk. That being so, the so-called test (or set of tests) for reckless endangerment is not totally objective.

Indeed, one of the four cases relied on by the Court of Appeals for its decision in *Minor, Commonwealth v. Sanders,* 339 Pa.Super. 373, 489 A.2d 207, 210 (1985), holds precisely that:

> A *sine qua non to a conviction is a conscious disregard of a known risk* of death or great bodily harm to another person. In this case, the trial court could properly find from the manner in which appellant grabbed Polly Holland around the neck and pulled her backwards into a room that *he consciously disregarded a known risk* of serious bodily harm to her person. (citation omitted) (emphasis supplied).

### 5) The Subjective–Objective Problem in a Nutshell

QUESTION: Is the test for reckless endangerment subjective or objective?

ANSWER # 1: It is both.

ANSWER # 2: There is no such thing as THE test. There are various tests, some of which are subjective and some of which are objective.

### The Ultimate Merger Question

 As we fully discussed in the course of analyzing why the conviction for reckless endangerment and the conviction for assault with intent to maim were not inconsistent even when based on the same act, the subjective *mens rea* of reckless indifference to a harmful consequence at a certain point along the rising continuum of blameworthiness may ripen into the even more blameworthy specific intent to inflict the harm. At that point, the lesser included offense of reckless endangerment merged into the greater inclusive offense of assault with intent to maim. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

In the case of *Commonwealth v. Sanders, supra,* the doubly inchoate crime of reckless endangerment merged or was racheted upward two steps. With the adding of the incremental *mens rea* of specific intent, it merged into an aggravated assault. Then, with the adding of the incremental *actus reus* of consummation, the already once-merged entity merged yet again into the consummated crime of rape. The Pennsylvania Court held, 489 A.2d at 211–212:

> Appellant contends, however, that for sentencing purposes the offense of recklessly endangering merged in the crime of rape. We are constrained to agree ... For crimes to merge, one must "necessarily involve" the other.

> . . . . .

> The trial court in this case found that the aggravated assault committed by appellant had been a necessary part of the crime of rape and, therefore, that it had merged into the more serious offense. As we have seen, however, *the crime of recklessly endangering the victim was merely a part of the crime of aggravated assault* which, the court found, constituted the evidence of forcible compulsion necessary to

prove the crime of rape. Under these circumstances, *it must follow that the crime of reckless endangerment also merged in the crime of rape* for sentencing purposes, for *rape, aggravated assault and reckless endangerment were all part of the "same offense."* (emphasis supplied).

*JUDGMENT FOR ASSAULT WITH INTENT TO MAIM AFFIRMED; SENTENCE FOR RECKLESS ENDANGER-MENT VACATED; COSTS TO BE PAID BY CHARLES COUNTY.*