702 A.2d 949

**Diallo Mugabe DISHMAN**

v.

**STATE of Maryland.**

No. 610, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Dec. 1, 1997.

---

362

Brian J. Murphy, Assigned Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore and Jack B. Johnson, State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before WENNER, EYLER and THIEME, JJ.

THIEME, Judge.

Diallo Mugabe Dishman, the appellant, was convicted by a jury in the Circuit Court for Prince George's County, Judge Sheila Tillerson Adams presiding, of first degree murder and robbery. The appellant raises three issues for our consideration on appeal:

1. Did the trial court commit error in refusing to instruct the jury on manslaughter, accessory after the fact, assault and battery, reckless endangerment, and defense of others?

2. Did the trial court commit error in admitting evidence of cocaine possession by the appellant the day after the offense?

3. Did the trial court commit error in allowing the testimony of the medical examiner when the chain of custody of the body had not been proven?

Perceiving no error below we shall affirm the judgment of the trial court.

## I

## BACKGROUND

On March 11, 1996, the body of Peverly Hart ("the victim") was discovered off to the side of Lottsford Vista Road. The discovery was made by Edward Pickens, who was driving to work at approximately 6:00 a.m. that morning when he noticed a small fire at the side of the road. He stopped to investigate and, noticing the fire was that of a burning body, he contacted the police.

The exact events surrounding the death of the victim are unclear due to the varying accounts of the night in question. During the afternoon or evening of March 10, 1996,[1] for some unknown reason, the victim ultimately drove to 410 Cedar Leaf Avenue, which was the appellant's residence that he shared with his fiancée, Felicia Jackson.[2] And, some time during the course of that night, the victim was murdered. The appellant elected not to testify at trial. Nevertheless, the following written statements were admitted by the State at trial as the appellant's explanations (albeit inconsistent) for what occurred on the date in question.

**Statement No. 1.** On March 12, 1996, at 9:45 a.m., after his apprehension, the appellant gave his first written statement to the police. In that statement the appellant maintained that he came home on the afternoon of March 10 to find a black bag with something stuffed inside in one of the bedrooms. On further investigation, the appellant discovered the body of a woman that was bound with tape. The appellant said he also noticed a note that read: "You snitch and your bitch is next, do what you gotta." The appellant "freaked," called various

---

1. Ms. Hart was last seen by Mr. Nelson Bond, a friend of the decedent's, at 2:00 p.m. on the day of the murder.

2. Apparently, the victim and Ms. Jackson had been acquaintances prior to the night of the murder. Furthermore, the appellant said he had known Ms. Hart for about four months prior to the murder.

 Ms. Jackson was also indicted in relation to the instant case as an accessory after the fact to murder.

friends asking for a ride so that he could "dispose of some trash," and at approximately 2:00 a.m. on March 11 the appellant finally saw a friend drive by who offered to give him a ride.[3]

At that point, the appellant and Ms. Jackson came outside of their residence carrying the body still in the garbage bag. They put the body in the trunk of the vehicle and proceeded to a gas station where the appellant filled a container with gasoline. They next approached Lottsford Vista Road where the appellant informed the driver to pull off to the side of the road. The appellant, with the help of Ms. Jackson, removed the body from the trunk and the appellant dragged the body down a small hill next to a bridge. The appellant poured gasoline on the body and ignited it, the vehicle then fled the scene.

**Statement No. 2.** The appellant's second statement was also given on March 12, 1996, but this one was made at 4:15 p.m. In this statement the appellant maintained that he and Ms. Jackson were at their residence when the victim came over. Ms. Jackson and the victim then began to quarrel, at which point the victim grabbed Ms. Jackson by the hair and they both "threw a couple of punches." The appellant grabbed the victim by the jacket collar in an attempt to pull the two women apart, and somehow all three of the individuals fell backwards. Then, according to the appellant, "a few moments later in the midst of the confusion [the victim] wasn't moving. She took one more deep breath so I thought she was fine and then she laid there." The appellant and Ms. Jackson both "panicked," and the appellant "made some calls to get rid of [the victim's body]." The appellant ended his statement by maintaining that "I didn't try to choke anyone and [Ms. Jackson] wasn't either." When asked why the victim had been bound with duct tape, the appellant responded that he didn't "want her to get up and go nowhere." At that point the

---

**3.** According to the appellant, he never told the driver of the vehicle what was in the bag. All the appellant said was that he had to take a bag to his brother's house.

appellant removed some rings from the victim's fingers and placed her body in a garbage bag. The appellant did not elaborate further on exactly how he disposed of the body.

Monte McNair was the driver of the vehicle from which the appellant obtained assistance. At trial, Mr. McNair testified that just after midnight the appellant came by Mr. McNair's house and asked if Mr. McNair could give him a ride. Mr. McNair agreed, and once back at the appellant's residence Mr. McNair waited in his vehicle while the appellant entered his residence. A short time later, the appellant and Ms. Jackson appeared. They were both wearing surgical gloves and carrying something wrapped in a blanket. The two then put the object in the trunk of Mr. McNair's vehicle and the appellant also placed a gasoline can in the trunk. Mr. McNair drove to Lottsford Vista Road at the request of the appellant. Once at the scene where the victim's body was dumped, Mr. McNair watched from his vehicle while the appellant and Ms. Jackson removed the item from the trunk of the vehicle, the appellant carried the gasoline can over to the wooded area, and the appellant returned to the vehicle and told Mr. McNair not to say anything about what had just occurred. Mr. McNair further explained that after hearing the next day that a burned body had been found in the same area he contacted the police.

The appellant was apprehended by police on March 12, 1996, at his home. He was arrested on unrelated bench warrants and taken to the police station. Later that same evening, the appellant took the officers to a pawn shop where the victim's jewelry was located, and he also took them to the place where he had disposed of her vehicle. During a subsequent search of the appellant's residence, duct tape was recovered.

The appellant was charged with murder, robbery with a deadly weapon, robbery, and car jacking. On March 3, 1997,

the appellant's trial began.[4] At the conclusion of the five-day trial, the State elected to nol pros the charges of armed robbery and carjacking, and the jury convicted the appellant of first-degree murder and robbery. The appellant was subsequently sentenced to life imprisonment plus ten years consecutive. This timely appeal was noted.

## II.

## DISCUSSION

## A.

### Failure to Give Requested Jury Instructions

 Maryland Rule 4–325(c), entitled "Instructions to the Jury," provides in pertinent part,

> The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.

Quoting *Bruce v. State*, 218 Md. 87, 97, 145 A.2d 428 (1958), the Court of Appeals reiterated in *Smith v. State*, 302 Md. 175, 179, 486 A.2d 196 (1985), " 'it is incumbent upon the court, . . . when requested in a criminal case, to give an . . . instruction on every essential question or point of law supported by the evidence.' " That requirement to instruct the jury is mandatory. *Ellison v. State*, 104 Md.App. 655, 660, 657 A.2d 402, *cert. denied*, 340 Md. 216, 665 A.2d 1058 (1995).

 Furthermore, when reviewing whether a trial court was required to give a requested instruction, an appellate court

> must determine whether the requested instruction constitutes a correct statement of the law; whether it is applicable under the facts and circumstances of this case; and whether it has been fairly covered in the instructions actually given.

---

**4.** The charges against Ms. Jackson were severed from the appellant's case.

*Mack v. State,* 300 Md. 583, 592, 479 A.2d 1344 (1984). We therefore reverse for a refusal to give a jury instruction only on a showing of an abuse of discretion. *Dean v. State,* 325 Md. 230, 240, 600 A.2d 409 (1992).

The appellant first complains that the trial court erred in refusing to give various jury instructions he requested. The requested instructions were for (1) manslaughter, (2) defense of others, (3) accessory after the fact, (4) reckless endangerment, and (5) assault and battery. We shall discuss the manslaughter and defense of others instructions together and then dispose of the remaining three.

## 1.

### Manslaughter and Defense of Others

The appellant requested that the trial court instruct the jury as to manslaughter as well as defense of others. In support of the instructions, defense counsel maintained that the appellant's second statement to the police, introduced by the State at trial, evidenced that he had no intent to kill the victim but rather that her death resulted accidentally when the appellant intervened in a fight between the two women. Thus, the appellant argues that that statement equated to *prima facie* proof of defense of others, adequate for either (1) reducing murder to not guilty in the case of a perfect defense of others, or (2) reducing murder to manslaughter in the case of an imperfect defense of others. The appellant further relies on the fact that because his indictment "tracked the language of Maryland Code, Article 27, Section 616" he was "charged with manslaughter." Accordingly, the appellant would have us reverse the decision of the lower court.

The issue the appellant brings before us, though penned in ordinary terms of the trial court's failure to give requested jury instructions, is not quite as simple as either of the parties has contemplated. In fact, the ultimate answer to the question "Did the trial court err in refusing to give the requested manslaughter instruction?" requires us to ask a series of preliminary questions that will necessarily enable us to reach

the appropriate decision given the unique facts in the case at bar.

### a. Was the appellant charged with manslaughter in accordance with Md.Ann.Code, art. 27 § 616?

Before proceeding to the appellant's argument that an imperfect defense of others permitted a jury to return a verdict of manslaughter as opposed to murder, as a threshold issue we must resolve whether the appellant was charged with manslaughter in accordance with the language in his indictment. Although the appellant is correct in his assertion that his indictment was, in fact, in the form prescribed by Md.Ann. Code, art. 27 § 616 (1996 Repl.Vol.), his analysis is flawed when he necessarily assumes that he was charged with manslaughter. We elaborate.

Section 616, entitled "Indictment for murder or manslaughter," provides:

In any indictment for murder or manslaughter, or for being an accessory thereto, it shall not be necessary to set forth the manner or means of death. It shall be sufficient to use a formula substantially to the following effect: "That A.B., on the.... day of.... nineteen hundred and...., at the county aforesaid, feloniously (wilfully and of deliberately premeditated malice aforethought) did kill (and murder) C.D. against the peace, government and dignity of the State."

That section was originally enacted in 1906, and for over ninety years it has remained in the same form with only a few minor alterations. In 1963 the last clause of the statute, providing that the killing was done "against the peace, government and dignity of the State," was added. *See* 1963 Md. Laws ch. 558 § 7; *Ross v. State*, 308 Md. 337, 343, 519 A.2d 735 (1987). Additionally, there were also amendments to its form due to controversies regarding the death penalty. *State v. Ward*, 284 Md. 189, 200, 396 A.2d 1041 (1978). Those amendments, however, had no effect on the substance of the section now before us.

■ The enactment of section 616 was not intended to create a new offense, but rather it " 'merely furnishes a shortened statutory form which may, but need not, be used in lieu of the common law forms.' " *Wooten–Bey v. State*, 308 Md. 534, 538, 520 A.2d 1090, *cert. denied*, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 853 (1987) (quoting *Wood v. State*, 191 Md. 658, 667, 62 A.2d 576 (1948)). In *Neusbaum v. State*, 156 Md. 149, 143 A. 872 (1928), the Court of Appeals had occasion to pass upon the constitutionality of section 616. In holding that the section did pass constitutional muster, the Court further illuminated the purpose of the shortened statutory form of the indictment:

> Statutes similar in character to that now under consideration have been enacted in many of the American states as well as in England, in an effort to escape the excessive formalism of the common law, which formerly made the conviction or acquittal of one charged with crime so often turn upon some technical quibble rather than upon the guilt or innocence of the accused, and the uniform tendency of the courts has been to uphold them wherever that could be done without infringing the right of the accused to the protection of such constitutional guarantees, as the right to be informed of the charge against him.

*Id.* at 157–58, 143 A. 872; *see also State v. Ward*, 284 Md. at 200, 396 A.2d 1041; *State v. Williamson,* 282 Md. 100, 109–110, 382 A.2d 588 (1978).

■ Turning to the precise wording of the statute, both this Court and the Court of Appeals have held that, generally speaking, under the statutory short form of the indictment, an accused may be found guilty of first degree murder, second degree murder, or manslaughter. *State v. Ward*, 284 Md. at 200, 396 A.2d 1041; *Gray v. State*, 6 Md.App. 677, 684, 253 A.2d 395 (1969); *McFadden v. State*, 1 Md.App. 511, 516, 231 A.2d 910 (1967). Nevertheless, in *Brown v. State*, 44 Md.App. 71, 410 A.2d 17 (1979), former Chief Judge Gilbert, writing for this Court, recognized an exception to that general rule. In *Brown*, the defendant was charged by way of indictment which read, in relevant part: "that Michael Allen Brown, Defendant,

did unlawfully, willfully, **deliberately and with premeditation** kill and slay George Wesley Jones...." (Emphasis supplied.) We explained that "the inclusion in the indictment of the words 'with premeditation' and 'deliberately' precludes a construction that the indictment charges manslaughter." *Id.* at 74, 410 A.2d 17. Accordingly, the defendant in *Brown* was indicted by way of the statutory short form, since the statutory form includes the terms "deliberately" and "premeditated" in parentheses and the legislature, by providing for the possibility of such wording, obviously intended for the inclusion of those terms to be encompassed within the statutory short form. Nevertheless, the form under which Brown was charged, *because* of the inclusion of the terms "premeditated" and "deliberately," no longer automatically included a manslaughter charge in the indictment.

Maryland law has long supported the proposition emphasized by this Court in *Brown.* Some one hundred years ago it was recognized that statutory short form indictments could appropriately be used to charge various degrees of homicide. In 1897 Lewis Hochheimer wrote:

By 24 & 25 Vict., ch. 100, § 6 and similar statutes in various states, it is made unnecessary, in indictments for homicide, to set forth the manner or means of death. Such legislation has been sustained against objections on constitutional grounds. Indictments thereunder may be worded as follows:

### 1. Murder.

The Jurors etc. present, that A.B., on etc., at etc., feloniously and of his [**deliberately premeditated**] malice aforethought did kill and murder C.D., against the peace etc.

### 2. Manslaughter

The Jurors etc. present, that A.B., on etc., at etc., feloniously did kill and slay C.D., against the peace etc.

*Hochheimer's Criminal Law,* 1st ed. 1897 at 680–81 (emphasis supplied). Thus, before Maryland had even enacted its 1906

version of what is now section 616, it was recognized that the addition of the terms "deliberately" and "premeditated" specified a charge of murder rather than manslaughter.

We are faced with the identical situation here as was before this Court some twenty years ago in *Brown*. The appellant in the case at bar was charged by way of indictment which read:

> The Grand Jurors of the State of Maryland, for the body of Prince George's County, on their oath do present that DIALLO MUGABE DISHMAN late of Prince George's County, aforesaid, on or about the 10th day of March, nineteen hundred and ninety-six, at Prince George's County aforesaid, feloniously, wilfully and of his **deliberately premeditated** malice aforethought, did kill and murder Peverly Anrise Hart, in violation of the Common Law of Maryland, and against the peace, government and dignity of the State. (Murder).

(Emphasis supplied.) As in *Brown*, the appellant's indictment substantially tracks the language of section 616, thereby charging the appellant by way of the statutory short form indictment. As in *Brown*, the terms "deliberately" and "premeditated" were specifically added to the appellant's short form indictment. It follows then that, as in *Brown*, the wording of the indictment against the appellant *precluded* an interpretation that the indictment charged manslaughter.

### b. Does a finding that manslaughter was not charged in the indictment prevent that offense from reaching the jury for consideration?

In light of the fact that contrary to the appellant's assertions he was not specifically charged with manslaughter, we next must consider whether the failure of the indictment to charge manslaughter precluded that offense from coming before a jury for consideration. We hold that it does not.

It is well settled that voluntary manslaughter is a lesser included offense of murder. *Beckwith v. State*, 78 Md.App. 358, 366, 553 A.2d 259 (1989), *aff'd in part, rev'd in part*, 320 Md. 410, 578 A.2d 220 (1990) ("[M]urder in the

second degree and manslaughter are lesser included offenses in first degree murder[.]"). Nevertheless, when a lesser included offense is an *uncharged* lesser included offense, a jury instruction with regard to that lesser offense need only be given when the evidence generates the giving of the instruction. *Blackwell v. State*, 278 Md. 466, 477, 365 A.2d 545 (1976), *cert. denied*, 431 U.S. 918, 97 S.Ct. 2183, 53 L.Ed.2d 229 (1977) ("The general rule is that where there is no evidence supporting conviction of a lesser degree of homicide, no instructions on lesser offenses should be given."); *Beckwith v. State*, 78 Md.App. at 366, 553 A.2d 259; *see also Hof v. State*, 337 Md. 581, 612, 655 A.2d 370 (1995) (Maryland Rule 4–325(c) "has been interpreted to require that a requested instruction be given only where there is evidence in the record to support it."). In *Blackwell*, the Court of Appeals cited its earlier decision of *Chisley v. State*, 202 Md. 87, 95 A.2d 577 (1953), for the proposition that a judge need not instruct a jury on a lesser included offense when no evidence is offered to generate that lesser offense. The Court wrote:

> In [*Chisley*, the defendant] was convicted of first degree murder. The case was submitted to the jury on the basis of first and second degree murder only; Chisley contended that he was entitled to a jury instruction on manslaughter. We held that in the total absence of evidence of provocation or passion, there was no basis upon which a jury could properly arrive at a verdict of manslaughter, and that consequently it was not error for the trial judge to refuse to give an instruction on manslaughter.

*Blackwell, supra*, at 477–78, 365 A.2d 545. We find the holding in *Chisley* persuasive to the argument currently before us.

■ In the case at bar, the failure of the indictment to charge manslaughter did not foreclose completely the possibility of the appellant receiving a jury instruction as to manslaughter. But, because manslaughter was an uncharged lesser included offense of murder, the appellant was entitled to an instruction on manslaughter if, and only if, the evidence

generated the offense of manslaughter. That, in turn, brings us to our third question:

### c. Was the requested manslaughter instruction generated by the evidence?

■ To resolve the third question, we must now turn to the heart of the appellant's claim as to manslaughter, *i.e.*, that because he was coming to the aid of another (Ms. Jackson), he was entitled to an instruction on defense of others. If, on the one hand, the appellant had successfully generated a case as to the imperfect defense of others, then the manslaughter claim should have been submitted to the jury as a means by which the jury could mitigate murder to manslaughter. If, on the other hand, the appellant had failed to generate an issue as to imperfect defense of others, then, as that was his only factual basis for requesting a manslaughter instruction at trial, the manslaughter instruction was properly refused. We must determine whether the appellant successfully generated a factual issue as to defense of others.

■ When claiming defense of others, the appellant has "the burden of initially producing 'some evidence' on the issue of mitigation or self-defense (or of relying upon evidence produced by the State) sufficient to give rise to a jury issue with respect to these defenses[.]" *State v. Evans*, 278 Md. 197, 208, 362 A.2d 629 (1976); *see also Robertson v. State*, 112 Md.App. 366, 381, 685 A.2d 805 (1996) (Maryland follows federal court principles that "a defendant is entitled to have the judge instruct the jury on his theory of defense provided that it is supported by law and has some foundation in the evidence."); *Sparks v. State*, 91 Md.App. 35, 55, 603 A.2d 1258, *cert. denied*, 327 Md. 524, 610 A.2d 797 (1992) ("[I]t is necessary for a defendant to generate a genuine jury issue as to certain defenses before becoming entitled to jury instructions with respect to them."). The evidence produced on behalf of the defense need not rise to the level of "beyond a reasonable doubt," "clear and convincing," or "preponderance." *State v. Martin*, 329 Md. 351, 359, 619 A.2d 992, *cert. denied*, 510 U.S. 855, 114 S.Ct. 161, 126 L.Ed.2d 122 (1993); *Dykes v. State*, 319

Md. 206, 217, 571 A.2d 1251 (1990). Accordingly, the appellant bore the burden of producing "some" evidence which would allow a jury to find that he acted in defense of others.

 The Maryland Criminal Pattern Jury Instructions lists four factors, *all* of which must be present for the appellant successfully to generate an issue of defense of others. Those factors are:

(1) the defendant actually believed that the person defended was in immediate and imminent danger of bodily harm;

(2) the defendant's belief was reasonable;

(3) the defendant used no more force than was reasonably necessary to defend the person defended in light of the threatened or actual force; and

(4) the defendant's purpose in using force was to aid the person defended.

MPJI–Cr 5:01. A perfect defense of others occurs when a defendant honestly and reasonably believes that the person defended was in imminent danger of death or serious bodily harm. The result is a not guilty verdict. *See Alexander v. State,* 52 Md.App. 171, 176–78, 447 A.2d 880, *aff'd,* 294 Md. 600, 451 A.2d 664 (1982). On the other hand, if a defendant honestly, but *unreasonably,* believes that the person defended was in imminent danger of death or serious bodily harm and he honestly, but *unreasonably,* believes that the force used was necessary, then the defendant has an imperfect defense of others capable of reducing a murder charge to manslaughter. *Shuck v. State,* 29 Md.App. 33, 37–43, 349 A.2d 378 (1975).

In rejecting the appellant's requested instruction on that defense, the trial court explained:

Again, defense of others is a defense, and the defendant—there is no evidence that the defendant believed that the person defended was the person in immediate danger of serious bodily harm, there is no evidence that the defendant's belief was reasonable, and there is no—for those reasons, there was nothing[.]

We agree with the trial court that the appellant failed to generate any issue of defense of others to warrant a jury instruction. The appellant's sole basis for requesting the instruction was that "he was not legally responsible for the death of the victim because he was coming to the aid of someone in a fight," that someone being Ms. Jackson. The only evidence the appellant set forth to support his theory was the second written statement that he gave to police on March 12, in which he stated that Ms. Jackson and the victim quarreled, they both "threw a couple of punches," and the victim grabbed Ms. Jackson by the hair. Furthermore, in his statement the appellant claimed that when the victim and Ms. Jackson were fighting, he "thought they were joking at first."

In sum, the appellant utterly failed to put forth *any* evidence that he believed Ms. Jackson to be in "immediate and imminent danger" of death or serious bodily harm, or that even had he entertained such a belief (which is highly doubtful given his comment that the women had appeared to be "joking"), that that belief would have been reasonable under the circumstances.[5] Because the record lacked "sufficient support in the evidence" to warrant a jury instruction as to either perfect or imperfect defense of others, *Robertson, supra*, at 385, 685 A.2d 805, the trial court acted properly in refusing to give the requested jury instruction.

In light of the appellant's failure to generate an affirmative defense, we may now turn to our fourth and final question:

### d. Did the trial court properly refuse to give the requested manslaughter instruction?

Our simple answer to that question is yes. By engaging in the preceding analysis, we have determined that the appellant was not charged with manslaughter, and because he was not

---

**5.** Although the defense fails if even one of the four components is not adequately generated by the defense, we note parenthetically that we also have trouble finding that the appellant generated an issue as to the third or fourth components, *i.e.*, that he used no more force than was necessary and that his sole purpose in using force was to aid Ms. Jackson.

charged with manslaughter he was only entitled to a manslaughter instruction if it had been generated by the evidence. We have further determined that because the appellant failed to generate an issue of imperfect defense of others (the only basis for which the appellant claimed manslaughter) the jury was given no factual basis to find him guilty of manslaughter. Therefore, we come to the inescapable conclusion that as the lesser included offense of manslaughter was neither charged nor generated by the evidence, the trial court acted properly in refusing to give the requested instruction.

## 2.

## Accessory After the Fact

█ The appellant also claims that he was improperly denied an instruction on accessory after the fact. He relies on his first statement given to police and claims that "because he only helped dispose of an already dead body" he was, at most, guilty of being an accessory after the fact to murder. Again the appellant relies on the indictment as his support for requesting the instant instruction: "[T]he statutory short form murder indictment, like that used in the instant case, has been held to also charge the crime of accessory to murder." The appellant brings our attention to *Souffie v. State*, 50 Md.App. 547, 569, 439 A.2d 1127 (1982), in which this Court held that "the statutory short form of indictment for murder ... Art. 27 § 616, applies to murder, manslaughter, or for being an accessory thereto."

█ We agree with the appellant that, generally speaking, the short form indictment will suffice to put an accused on notice not only as to the various degrees of homicide, but also as to accessoryship of that homicide. In cases such as the one before us, however, where the indictment by its precise language *specifically* charges first degree murder and fails to charge its lesser counterpart of manslaughter, we decline to extend the scope of the indictment to also charging accessoryship. The logic behind our holding is quite simplistic indeed. If, in fact, the inclusion of the words "premeditated" and

"deliberate" precludes the charging of manslaughter, a lesser form of homicide but a form of homicide nonetheless, then why would the addition of those two key words not also preclude the charging of a non-lesser included non-homicidal offense? The answer to that question is that it would not. We cannot imagine that the legislature intended, when contemplating the addition of the words "premeditated" and "deliberate" in an indictment, to restrict the availability of manslaughter, but it did not so intend to restrict the availability of an accessory to that murder. As we presume, when construing a statute, to carry out what the legislature intended, see, *Johnson v. State*, 75 Md.App. 621, 630–31, 542 A.2d 429 (1988), we hold today that when indicted under Article 27 § 616 with a murder that was "premeditated and deliberate," the wording of such indictment precludes a construction that the accused is charged with an accessoryship of that murder. Therefore, as accessory after the fact was neither charged nor a lesser included offense of murder in the instant case, the trial court committed no error in refusing the requested instruction.

### 3.

### Reckless Endangerment, Assault and Battery

As to the appellant's contention that the jury should have been instructed on reckless endangerment,[6] again we perceive no error. Reckless endangerment, to be sure, *is* a lesser included offense of "either a grossly negligent involuntary manslaughter or a depraved-heart second-degree murder." *Williams v. State*, 100 Md.App. 468, 485, 641 A.2d 990 (1994). The appellant, however, cites *Williams* for the proposition that reckless endangerment "has been recognized as a lesser included offense of second degree murder and man-

---

6. Md.Ann.Code art. 27, § 12A–2 (Supp.1997), provides, in pertinent part:

(1) Any person who recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person is guilty of the misdemeanor of reckless endangerment and on conviction is subject to a fine of not more than $5,000 or imprisonment of not more than 5 years or both.

slaughter." The appellant overlooks the fact that *Williams* is referring to involuntary acts of homicide, and he significantly omits the phrase "depraved-heart" from the second-degree murder characterization, as well as the term "involuntary" from the manslaughter characterization. Whereas there was no argument below that the victim's death in the instant case resulted from an involuntary act of the appellant, his reliance on *Williams* is wholly misplaced. Accordingly, as the offense was not charged and was not a lesser included offense of the offenses that *were* charged, no jury instruction was warranted.

▮▮▮▮▮ Finally we dispose of the appellant's contention that the jury should have been instructed on assault and battery "because [the appellant] only battered, but did not kill the victim." Assault and battery are, indeed, lesser included offenses of murder. *See Patrick v. State*, 90 Md.App. 475, 486, 601 A.2d 1133 (1992). Nevertheless, they were *uncharged* lesser included offenses. And, because given the facts in the instant case we find "no rational basis" upon which the jury could have convicted the appellant of the lesser included offense of assault and battery but not the greater charged offense of murder, *see, e.g. id.* at 487–88, 601 A.2d 1133, we hold that the instruction was properly denied.

## B.

### Evidence of Subsequent Cocaine Possession

▮▮▮▮ The appellant next complains that the trial court erred in allowing evidence of cocaine possession on the day after the crime to be admitted at trial. Specifically, the appellant contends that the evidence was admitted in violation of Maryland Rule 5–404(b). That rule provides:

(b) **Other Crimes, Wrongs, or Acts.**—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for others purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, absence of mistake or accident.

The testimony of cocaine possession that the appellant challenges was elicited from Alphonso Barnes, a friend of the appellant, who was called as a witness for the State. Mr. Barnes testified, over defense objections, that on the day after the instant offense the appellant "showed [him] some crack cocaine." The appellant now claims that Mr. Barnes's testimony was highly prejudicial as well as irrelevant to the ultimate issue in the case, *i.e.*, whether the appellant was involved in the murder of the victim, and therefore should have been excluded.

What the appellant fails to mention before this Court, however, is that on numerous occasions during the trial and prior to the testimony of Mr. Barnes the defense had cross-examined various witnesses as to whether they had ever seen the appellant use or sell drugs. The trial court allowed limited testimony as to the appellant's cocaine possession to refute what had been brought out by the defense in earlier cross-examination. We find the trial court's actions perfectly reasonable, given the fact that the defense itself introduced testimony at trial regarding possession of drugs by the appellant. As Judge Chasanow explained for the Court of Appeals in *Clark v. State*, 332 Md. 77, 84–85, 629 A.2d 1239 (1993):

> The "opening the door" doctrine is really a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant in order to respond to (1) admissible evidence which generates and issue, or (2) inadmissible evidence admitted by the court over objection. Generally, "opening the door" is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue.

(Footnote omitted.)

We agree with the State that the appellant, by eliciting testimony of the appellant's drugs habits or lack thereof, "opened the door" so that the State could properly say: "My opponent has injected an issue into the case, and I ought to be

able to introduce evidence on that issue." *Id.* at 85, 629 A.2d 1239. The trial court committed no abuse of discretion.

## C.

### Admission of Medical Examiner's Testimony

■ The appellant finally maintains that the medical examiner was erroneously permitted to testify at trial when the chain of custody of the victim's body had not properly been established within the dictates of Md.Code Ann., Cts. & Jud. Proc. § 10–1004 (1995 Repl.Vol. & Supp.1997).[7] He specifically argues that because (1) there appeared to be no mortician's statement and (2) even had such a statement existed, it was not delivered to the defense at least 25 days prior to trial as required by the statute, the trial court committed error in admitting the testimony of the medical examiner.

The appellant, however, has waived any claim of error because prior to trial he entered into a written stipulation with the State allowing the evidence to be admitted. As the State contends, and correctly so, "a stipulation is an agreement between counsel akin to a contract," and "[p]arties are generally held bound by their stipulations." *State v. Broberg,* 342 Md. 544, 558–59, 677 A.2d 602 (1996). After holding the matter *sub curia,* the trial court ruled that the parties had, in fact, stipulated as to the chain of custody of the victim's body. We can find no abuse of discretion in that ruling.

**JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

---

7. That section, entitled "Statement establishing chain of custody," provides in pertinent part:

(b) *Statement establishing chain of custody; contents.*—(1) In a criminal proceeding for a death which is a medical examiner's case, the chain of physical custody and control may be established by a signed statement by the mortician, or the mortician's agent, servant, or employee, who transported the body to the medical examiner's office, without the necessity of the personal appearance in court by the person who signed the statement.